## FRANCIS WARNER et al. *v.* SELINA WARNER.

1. CHANCERY: PLEADING: CERTAINTY IN.—Every fact necessary to complainant's right to recover, should be alleged in the bill with accuracy and clearness, and with certainty as to the eventual circumstances of time, place, &c.; uncertain and ambiguous allegations will be construed most strongly against the pleader.

2. HUSBAND AND WIFE: LIFE ESTATE IN SLAVES: FORFEITURE OF, ENURES TO REMAINDERMAN.—Where the husband acquired, by his marriage, the life estate owned by his wife in slaves, a forfeiture of his interest, caused by his illegal act, will not enure to the benefit of the wife, but to the remainderman.

3. SAME: DIVORCE: PURCHASER OF WIFE'S PROPERTY FROM HUSBAND NOT AFFECTED.—A decree, granting the wife a divorce *a vinculo*, and restoring her to all her rights, in property owned by her at the time of the marriage, will not affect a purchaser of the property from the husband before the divorce.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

*W. C. Smedes*, for appellants.

*T. A. Marshall* and *C. Leigh*, for appellee.

HANDY, J., delivered the opinion of the court.

The appellee filed her bill in the Superior Court of Chancery, stating in substance, that Jeremiah Porter died in Arkansas, in 1835, leaving a will which was probated, containing among others, the following bequests : " To my daughter Caroline Selina, I give and bequeath two negro girls, Mary and Eliza."

" To my son, Joshua Morrison, I give and bequeath a negro girl, Maria, and a negro boy, Alfred;" which negroes were " to be given to each of the heirs as they shall attain to lawful age, or marry."

Caroline Selina married one Vaughan and died many years ago, and her husband afterwards left Arkansas many years ago, and has not been heard of, and is believed to be dead. Joshua Morrison died a minor, and leaving no child, and possession of the slave Maria was never delivered to him.

The complainant claims that by the laws of Arkansas, she being the mother of said legatees, was their lawful heir, and as such, entitled to their estates, or, at all events, that she is entitled to hold the slave Maria during her life, as trustee for the other children of the testator after her death, she having a life estate in her, as heir of Joshua Morrison.

In the year 1837, the complainant was married to Franklin S. Warner, and they lived together until 1849, when he deserted her, taking with him from Arkansas, the slaves Eliza and Maria and a child of one of them, which he brought to this State and sold or delivered to the defendant Lum or his wife, but at what time, she does not know; and the bill further states that in 1853, she was divorced from Warner, and was restored thereby to all her rights; and she seeks a recovery of the slaves. A demurrer was filed to this bill, which was overruled, and from that order this appeal was taken.

It is admitted by the counsel for the appellee, that under the laws of Arkansas, the slaves bequeathed to Caroline Selina and Joshua Morrison, upon their dying without issue, descended to the appellee, their mother, for life, remainder to the other children of the testator. The bill does not show at what time these legatees died, except that it states that Caroline died many years ago. But it appears that Joshua Morrison died a minor; and from the fact that he was named in the will as one of the executors, it is to be presumed, that it was not long after the testator's death before he would have become of age. It is not to be supposed, under these circumstances, that he was living after the year 1846. But however this may be, the bill does not show, that these legatees did not die until after that year, and it cannot be presumed that they were living after that year, for the purpose of this suit; for if such was the case, it was incumbent on the complainant to state it in her bill. It must therefore be taken that the complainant's rights, in consequence of the death of these legatees, accrued before

the passage of the statute of Arkansas of December, 1846, in relation to the rights of married women in slaves held by them to their separate use, under the provisions of that Act.

It appears that the complainant was married to Warner in the year 1837, and by the rule of the common law, which prevailed in Arkansas until the enactment of the Act of 1846, whatever estate the complainant had in the slaves, passed to the husband in virtue of his marriage, and he had the right to dispose of the same, at least so far as the rights of the complainant were concerned.

But it is said, that though Warner became entitled to the life estate of his wife in the slaves, yet he forfeited it by removing them from the State of Arkansas. This may be true with reference to the title and interest of the parties in remainder. But it would not entitle the wife to recover in this suit. The husband was entitled to whatever estate the wife had; and if he sold it to the defendant Lum who purchased without notice of the rights of the complainant, she cannot recover against Lum and wife. Nor would her divorce, subsequent to such sale reinstate her rights, so as to enable her to recover against a purchaser without notice in this State; because when the sale was made, for aught that appears in the bill, Warner had the legal right to sell her life estate in the slaves.

Some vague allegations are made in the bill, with respect to the complainant being entitled to the slaves as trustee for the children of the testator. But it is plain that the slaves were specifically bequeathed to the legatees above named, and did not belong to the general estate of the testator, nor were included among the slaves left to the complainant, as trustee for herself and the children of the testator. Her claim is founded on the life estate which she acquired by the death of the legatees to whom the slaves were specifically left, and this is admitted by her counsel.

Under this view of the case, the demurrer of Lum and wife was well taken and should have been sustained.

The decree is therefore reversed and the bill dismissed.